# James Davis and Stephen Whicher, Jr., plaintiffs in error, *vs.* Commissioners of Muscatine county.

## *Error to Muscatine.*

A fund arising from the sale of lands, pre-empted for seats of justice, is a trust fund to be specially applied to the purposes contemplated in the grant; and is not subject to the ordinary drafts upon the county treasury.

This suit was originally brought before a justice of the peace, for Muscatine county, on a note of which the following is a copy :

"Thirty days after date, we promise to pay the commissioners of Muscatine, the sum of twenty-five dollars, with twenty per cent. interest from date, July 14th, 1840.

"JAMES DAVIS.
"STEPHEN WHICHER, Jr."

Summons was served upon Davis, and a judgment against him by default, July 19, 1841, for $25,00 and $5,00 interest and costs.

The cause was removed to the District Court by certiorari, and at the December term 1841, the cause came on for hearing, and the parties waived a trial by jury, and consented that the court should try the cause, on the following proofs and concessions :

"It is conceded by the plaintiff's attorney, that Stephen Whicher, Jr., signed the note as security. It is conceded by the defendant, that the claim of the plaintiffs is a legal one, and it is proved by Edward E. Fay, the clerk of plaintiff's court, that the debt was contracted for, and on account of funds arising from the sale of lands and lots, pre-empted by the plaintiffs, under an act of Congress entitled " an act, granting to the counties or parishes of each State and Territory of the United States, in which public lands are situated, the rights of pre-emption to quarter sections of land, for seats of justice within the same," approved May 26, 1824. It is contended by the defendant that he should be allowed the right of set-off as follows :

' *The Commissioners of Muscatine County.*

' To James Davis,             Dr.

' To this amount due me on your order on the county treas-

21

IOWA REPORTS.

ury of this county, dated Jan. 23, 1841, No. 461,          $37,50
'Ditto, dated Oct. 1st 1841, No. 481 (part of)            12,45.'

" Of which due notice was given by the defendant, and it is proved
by the testimony of H. Musgrave the treasurer of the plaintiffs, that
there has been no funds in the treasury, since the date of said orders,
wherewith to pay the same, and there rests his defence."

It was agreed further that if the said set-off was legitimate, and ap-
propriate, the judgment should be for the defendant, otherwise for the
plaintiff. Judgment was rendered for the plaintiff, for 30,90 and costs.

The defendant sued out a writ of error from this court. And the
said plaintiffs in error, by Whicher their attorney, come and say that
in the rendition of the judgment aforesaid there is manifest error in
this, to wit :

1. The judgment should have been rendered for the plaintiff's in error
and against the defendants in error, and not in favor of defendants in
error against the plaintiffs in error.

WHICHER, for plaintiffs in error.

LOWE, for defendants in error.

PER CURIAM, WILSON, JUSTICE.—The act of Congress relied up-
on, by the defence, sets forth, that there be granted to the several
counties or parishes of each State and territory of the United States,
where there are public lands, at the minimum price, for which public
lands of the United States are sold, the right of pre-emption to one
quarter section of land, in each of the counties or parishes of said
States and territories, in trust for said counties or parishes, respective-
ly, for the establishment of the seats of justice therein : Provided, the
proceeds of the sale of each of said quarter sections shall be appropria-
ted for the purpose of erecting public buildings in the county or par-
ish, for which it is located, after deducting therefrom the amount origi-
nally paid for the same. *And provided, further.* That the seat of
justice for said counties or parishes, respectively shall be fixed previous-
ly to a sale of the adjoining lands within the county or parish, for
which the same is located. Act of Congress, approved May 26, 1824.

This act grants to the counties the right of pre-emption to one quar-
ter section upon the express condition, to wit : that the proceeds of the
sale of said quarter sections shall be appropriated for the purpose of
erecting public buildings in the county, &c.

The counties availing themselves of this right, become trustees of the fund, and are bound to carry out the trust which is undertaken. They take the grant upon the condition specified, and no act of the counties, or of the board of county commissioners (their agents and representatives of the counties in fiscal transactions) could divest them of the liability to perform the trust, or divert this fund from the object to which the grantor and grantee intended it, much less can individuals do so.

It is admitted by the plaintiffs in error that the debt was contracted for and on account of funds arising from the sale of lands pre-empted under the act of Congress referred to. Now if the plaintiffs in error, can be allowed to set off county orders, which are issued to pay the usual expenses of the county, for instance for the payment of the per diem allowance of the commissioners, or their clerk, or that of the sheriff for attending court, it would put it out of their power to appropriate the fund to the objects for which those orders were issued, and thus wholly defeat the object of the grant. The case cited by the counsel for the plaintiffs in error, Bank of the Metropolis vs. The United States, Peters R. to sustain the position that neither corporations nor individuals can divide their funds into classes and appropriate them to particular objects to the injury of their creditors; and that though the United States have various departments of government to the support of which funds are appropriated, yet where an action is brought in a court of law, to recover an amount due by the defendant for moneys received on account of any part of the judiciary fund, a set-off may be pleaded for moneys expended by defendant in the military, navy, post-office or any other department, will not sustain the position assumed by him in this case. That doctrine so far as it applies to funds received by them, where no trust is created, or it may apply to the government where funds are received through the ordinary channels of revenue, and which consequently came into the treasury without specific appropriation, to any particular object, but there is nothing in that case which would warrant the inference that the government of the United States could not receive from individuals or corporations, a fund for a particular object, or that after receiving it, that the object of the donor, or grantor, could be defeated by persons having claims upon the treasury, wholly unconnected with the subject of the trust. Will it be contended, that if the money arising from the bequest of Smithson, of London, for the purpose of founding at Washington City, the Smithsonian Institution should be invested, as Congress have directed, in State stocks, until provision be made by law for carrying the purpose of the bequest

into effect, that it could be taken to pay the debts of individual creditors of the government?

The principles at law which apply to cases where a trust is created for the benefit of individuals, apply to this case. In these cases it has never been contended, that the indebtedness of the person who is to be benefitted by the trust, could be made the means of defeating the trust; but on the contrary in most cases the insolvency of the person, thus to be benefitted by it, or the apprehension of such insolvency, is in most cases the reason for creating the trust. To permit the object of the grant to be defeated in this way, would be virtually saying that the grantor shall not do what he will with his own.

We think the decision of the court below, not allowing the set-off, was correct.

Judgment below affirmed.